## Clark County Construction Company v. Warford.

(Decided May 20, 1924.)

### Appeal from Clark Circuit Court.

1. Master and Servant—Statute as to Willful Misconduct Held Not Applicable to Actions at Common Law.—Ky. Stats., section 4882, providing that no employee shall receive compensation on account of a willfully inflicted injury, willful misconduct, or in-

toxication of such employe, has no reference to actions at common law where employer has elected not to operate under Compensation Act.

2. Master and Servant—Servant Injured where he had no Right to be Cannot Recover Against Master Electing Not to Operate Under Compensation Act.—Under Ky. Stats., section 4960, if servant of master not electing to operate under Compensation Act is where he has no right to be, master owes him no duty, and he cannot recover for injury, though caused by negligence in failing to keep in proper condition instrumentalities with which employe is working.

3. Master and Servant—Held there was no Evidence to Sustain Defense that Servant was Working at a Place at which he had been Ordered Not to Work.—In action for personal injuries against master electing not to operate under Workmen's Compensation Act, held that there was no evidence to sustain defense that plaintiff was working at place at which he had been ordered not to work.

4. Master and Servant—Order that would be Understood by Man of Ordinary Prudence Required for Disobedience to Constitute Defense.—In action against master electing not to operate under Workmen's Compensation Act, to deny employe recovery on ground that he was working in disobedience of orders, order must be given in such terms as would be so understood by man of ordinary prudence under the circumstances.

HAYS & HAYS for appellant.

BENTON & DAVIS and RODNEY HAGGARD for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

The Clark County Construction Company was stripping some stone of earth and clay to use the stone in building a road. The stone was stripped by plowing up the earth and then scraping it off with wheel scrapers. The clay was hard to load in the scrapers for the reason that it was tough, and on Saturday before the accident in controversy a Fordson tractor was brought to the quarry and used in front of the mules pulling the scraper. The tractor was hitched to the front end of the tongue of the scraper by means of a chain fastened to it and fastened to a clevis attachment underneath the rear axle of the tractor. When fastened in this way the pulling of the tractor pulled the tongue down so the mules could not pull; to avoid this the chain was passed above the hind axle of the tractor and fastened to one of the timbers connecting the hind axle and the front axle. The scraper

was operated in this way on Saturday and on Monday morning until about ten o'clock when the accident occurred.    Appellee then was driving the tractor.    As they were at that time pulling a scraper out it struck some obstruction and suddenly stopped; this tightened the chain and the pull of the chain passing over the hind axle caused the front of the tractor to rear up and before it could be stopped it fell over backwards, catching appellee's leg and breaking it about three inches above the knee.    He brought this action to recover for his injury.    On final hearing a verdict and judgment were rendered in favor of the plaintiff for $5,030.00.    The defendant appeals.

By section 4960, Kentucky Statutes, every employer affected by the provisions of the Workmen's Compensation Act who does not elect to operate thereunder shall not in any suit at law by an employee to recover damages for a personal injury arising out of and in the course of his employment, be permitted to defend on the ground that the employee was guilty of contributory negligence or assumed the risk of injury or that the injury was caused by the negligence of a fellow servant.

By section 4882 of the same act it is provided that no employee shall be entitled to receive compensation on account of any injury caused by a wilfully inflicted injury, willful misconduct or intoxication of such employee.

In Clark County Construction Company v. Richards, 202 Ky. 276, it was held that section 4882, Ky. Statutes, has no reference to actions at common law by employees to recover for injury where the employer does not elect to operate under that act.    This section, therefore, has no application to this case, as appellant had not elected to operate under that act.    The rule has been laid down, however, in this class of cases that if the servant is where he has no right to be the master owes him no duty and he cannot recover for his injury though caused by negligence in failing to keep in proper condition the instrumentalities with which the employee is working. This rule has been applied where the servant works at a place at which he has been ordered not to work.    Western Kentucky Coal Company v. Smithers, 188 Ky. 224; Nelson Creek Coal Company v. Bransford, 189 Ky. 741; Woodrow v. High Splint Coal Company, 194 Ky. 30.

The defendant in substance pleaded this and the court did not submit the question to the jury.    The question before us is, was there any evidence to sustain this

defense? Dallas Rupard regularly operated the tractor. His testimony is in these words:

> "A. Well, the tractor wasn't running good; the commutator was out of shape, and I left the tractor in the quarry and went to the crusher to send word to the truck driver to call up when he got to the scales on the pike to send me a commutator out from the garage.
>
> "Q. Did you see Warford before you went away? A. Yes, sir.
>
> "Q. What occurred? A. I told him I was going to see the truck driver and get the commutator.
>
> "Q. What did you say to him about using or not using the tractor. A. Well that is all I said to him."

It is undisputed in the evidence that a like condition had arisen on Saturday and again Monday morning a short time before the accident and that on both these occasions Warford had operated the tractor while Rupard was gone. Rupard left the engine running and was gone something like a half hour, and under the circumstances it cannot be said that Warford received any orders not to operate this tractor while Rupard was away. He had pulled out several loads before the injury occurred and it cannot be presumed that the parties would understand that the hands and the mules and the tractor would all stand there idle while Rupard was gone, unless this was especially directed. It was a part of Warford's duties under his instructions to keep things going.

Appellant also relies on the testimony given by Claud Breeze, who was the timekeeper at the quarry. Mr. Harmon was the superintendent. Breeze testifies that a half hour before the injury he saw Warford and said this to him:

> "A. I told him that Mr. Harmon said for him to take charge of the stable and to keep it and run it on; that it kept a man busy at that all the time; and he said he would right then. I told him to go right then because it was time to put in the feed."

In view of the instructions to Warford to keep the work going and the fact that the injury occurred a few minutes after ten o'clock it cannot be said that Warford was at a place where he had no right to be when he was

operating the tractor until Rupard returned. It cannot be presumed that a workman receiving this message would understand that he was to leave immediately and bring the work to a standstill; on the contrary, the reasonable import of the message would be that he was to take charge of the stable and have it ready at noontime. Warford did not get his orders from the timekeeper; he got his orders from the superintendent, and to deny the employee a recovery on the ground that he was working in disobedience of his orders the order must be given in such terms as would be so understood by a man of ordinary prudence under the circumstances. The superintendent's orders only contemplated that Warford should take charge of the stable and it left him to determine when it should be necessary for him to go there. The teams are fed at noon and he did what a man of ordinary prudence would reasonably be expected to do until Rupard returned, for Rupard got back before eleven o'clock.

On the whole case we see no substantial error to the prejudice of appellant.

Judgment affirmed.